IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| TED E. ARROWOOD, | Civil Action No. 3:11-2801-MGL-JRM |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY | |
| Defendant. | |

This case is before the Court pursuant to Local Civil Rule 83.VII.02, et seq., DSC, concerning the disposition of Social Security cases in this District. Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his claim for Disability Insurance Benefits ("DIB").

**ADMINISTRATIVE PROCEEDINGS**

Plaintiff filed an application for DIB on March 21, 2008, alleging disability as of November 21, 2002. Tr. 225, 260. Plaintiff's claim was denied initially and upon reconsideration. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"). A hearing was held on August 28, 2009, at which Plaintiff and a vocational expert ("VE") appeared and testified. Tr. 75-120. The ALJ issued a decision dated October 27, 2009, denying benefits and finding that Plaintiff was not disabled. Tr. 179-190. Plaintiff timely requested a review of the ALJ's decision, and the Appeals Council granted Plaintiff's request by order dated July 30, 2010. Upon review, the case was remanded to the ALJ for further proceedings. Tr. 192-194.

On December 10, 2010, Plaintiff appeared and testified at a hearing before a different ALJ.

On February 23, 2011, the ALJ issued a decision denying benefits and finding that Plaintiff was not disabled. The ALJ, after hearing the testimony of a VE, concluded that work exists in the national economy which Plaintiff could perform.

Plaintiff was forty-five years old at the time he was last insured for disability benefits (December 31, 2007). He has a high school education and past relevant work as a millwright/welder. Tr. 27, 83, 282. Plaintiff alleges disability since November 21, 2002, due to degenerative disc disease, status post-multiple abdominal hernia repairs, obesity, depression, and anxiety. Tr. 16, 281.

The ALJ found (Tr. 16-29):

1. The claimant last met the insured status requirements of the Social Security Act on March 31, 2007.

2. The claimant did not engage in substantial gainful activity during the period from his alleged onset date of November 21, 2002 through his date last insured of December 31, 2007 (20 CFR 404.1571 *et seq.*).

3. Through his date last insured, the claimant had the following severe combination of impairments: degenerative disc disease, a status post-multiple abdominal hernia repairs, obesity, depression and anxiety (20 CFR 404.1520(c)).

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).

5. After careful consideration of the entire record, I find that, through his date last insured, the claimant had the residual functional capacity to sit, stand and walk for approximately 6 hours in a regular 8 hour workday, to lift and carry 20 pounds occasionally and 10 pounds frequently, with the claimant limited to occasional crawling, stooping and the climbing of ladders or scaffolds, with the claimant frequently able to climb steps, balance, kneel and crouch, with the claimant needing to avoid concentrated exposure to hazards, and with the claimant able to concentrate, persist and work at pace to do simple routine repetitive tasks at level 3 reasoning per the DOT, with

2

occasional interaction with the public, and appropriate interaction with co-workers and supervisors in a stable routine work setting.

6. Through his date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on August 30, 1962 and was 45 years old, which is defined as a younger individual age 18-49, on his date last insured (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Through the date last insured and considering the claimant's age, education, work experience and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569(a)).

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from November 21, 2002, his alleged onset date, through December 31, 2007, the date last insured (20 CFR 404.1520(g)).

The Appeals Council denied the request for review in a decision issued August 16, 2011. (Tr. 1-3). Accordingly, the ALJ's decision became the final decision of the Commissioner. Plaintiff filed this action in the United States District Court on October 14, 2011.

## **STANDARD OF REVIEW**

The only issues before this Court are whether correct legal principles were applied and whether the Commissioner's findings of fact are supported by substantial evidence. Richardson v. Perales, 402 U.S. 389 (1971); Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1972). Under 42 U.S.C.

§§ 423(d)(1)(A) and 423(d)(5) pursuant to the Regulations formulated by the Commissioner, Plaintiff has the burden of proving disability, which is defined as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a).

## **MEDICAL EVIDENCE**

Plaintiff sustained an abdominal injury when he tripped and fell against some cross ties at his job in October 2002. He was treated for abdominal and back pain at the Anderson Area Medical Center Emergency Department on October 23 and November 5, 2002. Tr. 426-428.

On November 11, 2002, Dr. Thomas Mann performed surgery to repair Plaintiff's abdominal hernia and enterotomy. Tr. 451-453. Plaintiff's back pain was treated by Dr. John W. Klekamp, an orthopedist, from January 2003 to January 2004. Tr. 461-464. Plaintiff began to develop drainage from the surgical wound after his November 2002 surgery. See Tr. 447. Plaintiff was hospitalized on February 23, 2003 for abdominal wound drainage. Tr. 447-449. On February 28, 2003, Plaintiff underwent surgery to remove infected mesh and repair a small bowel fistula. Tr. 442-444. He underwent exploratory laparotomy, excision of the small bowel fistula and primary anastomosis, and takedown of adhesions on March 3, 2003. Tr. 438-439. He was discharged from the hospital on March 13, 2003. Tr. 435.

Plaintiff sought a second opinion with Dr. John Rinkliff on October 20, 2003. Dr. Rinkliff's impression was recurrent incisional hernia. Tr. 459-460. On October 9, 2003, Dr. Rinkliff performed complex recurrent incision hernia repair surgery. Plaintiff was released from the hospital on October 13, 2003, at which time he had advanced to a regular diet and was noted to engage in normal

activities including ambulating without difficulty. Tr. 455. On October 28, 2003, Dr. Rinkliff found that Plaintiff's wound site was healing nicely with no sign of infection. He urged Plaintiff to do no heavy lifting, pushing, or pulling for one month. Tr. 454.

Dr. David Tollison initially evaluated Plaintiff on September 9, 2003, and diagnosed him with generalized anxiety disorder, adjustment disorder with depressed mood, and somatoform pain disorder. Dr. Tollison assigned Plaintiff with a global assessment of functioning ("GAF") rating of 50.[1] Dr. Tollison prescribed Plaintiff Xanax, and noted that Plaintiff needed to seek further treatment for his pain management as well as further treatment for his psychological issues. Tr. 489-490.

A lumbar MRI in December 2003 was noted to be essentially normal with mild degenerative changes at L4-5 and L5-S1. There was no evidence of neural impingement or destructive process. Dr. Klekamp assessed Plaintiff with low back pain and mild disc degeneration and referred Plaintiff to a physiatry rehabilitative practice for ongoing care and work hardening with the hope that Plaintiff could return to work within several weeks. Tr. 461.

On January 21, 2004, Plaintiff saw Dr. Clifford Monda of Upstate Medical Rehabilitation for abdominal and low back pain. Dr. Monda assessed Plaintiff with low back pain with some mild degenerative disk changes at L4/5 and L5/S1. He also noted that Plaintiff suffered from anxiety and

---

[1]The GAF contains a numeric scale (0 through 100) used to rate the severity of psychological symptoms and/or social, occupational, or school functioning, generally for the level of functioning at the time of evaluation. A GAF score between 21 and 30 may reflect that "behavior is considerably influenced by delusions or hallucinations" or "serious impairment in communication or judgment." A score of 31 to 40 indicates some impairment in reality testing or communication or "major impairments in several areas," 41 to 50 indicates "serious symptoms" or "serious difficulty in social or occupational functioning," 51 to 60 indicates "moderate symptoms" or "moderate difficulty in social or occupational functioning," and 61 and 70 reflects "mild symptoms" or "some difficulty in social, occupational, or school functioning ." Am. Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders 32-34 (4th ed. 2000).

depression. Tr. 480-481. Dr. Monda prescribed physical therapy and Lorcet for pain. Plaintiff saw Dr. Monda for monthly follow-ups through September 2004. Tr. 465-479.

Plaintiff began treatment with Dr. Robert LeBlond of Upstate Medical Rehabilitation in October 2004. Plaintiff reported that his back pain was about the same, but his medications alleviated his abdominal and back pain. Plaintiff complained that he was having trouble sleeping. On examination, Plaintiff's motor, sensory, and deep tendon reflexes were normal, and straight leg raising was negative. Dr. LeBlond assessed Plaintiff with chronic mechanical back pain with underlying degenerative component, abdominal pain status post hernia repair with revision, and depression secondary to chronic pain. Tr. 324. Dr. LeBlond noted that Plaintiff was stable neurologically at monthly to bimonthly follow-ups through August 2006. Tr. 322-23, 325-328, 374-79, 382-84.

On October 27, 2005, Dr. Tollison reported that he last saw Plaintiff in March 2004. Dr. Tollison noted that Plaintiff was "still struggling with agitated depression" and that he "overwhelms periodically." Dr. Tollison diagnosed Plaintiff with major depressive disorder, generalized anxiety disorder and a pain disorder. Tr. 345. On December 5, 2005, Dr. Tollison opined that Plaintiff was permanently and totally disabled due to a combination of psychological and physical injuries resulting from his October 2002 work injury. Tr. 485.

Plaintiff was evaluated by Randy Adams, a VE, in December 2005. Tr. 493-500. Plaintiff reported that his pain level averaged between six and seven, and that he had six to eleven "extremely bad" days per month when he would hardly get out of bed. Tr. 495-496. Plaintiff stated that he managed his symptoms with pain medication, lying down with his feet elevated, and sitting in a hot tub. Tr. 498. Plaintiff reported that he had trouble sleeping which resulted in him having low energy

6

levels during the day. Tr. 496. Vocational testing placed him in the marginal range of education, and indicated he was moderately depressed. Tr. 497. Mr. Adams opined that Plaintiff was not capable of engaging in any substantial gainful activity, and should be considered permanently and totally disabled. Tr. 500.

Also in December 2005, Dr. Seham El-Ibiary, a State agency physician, reviewed the medical record and completed a physical residual functional capacity ("RFC") assessment. He opined that Plaintiff could occasionally lift twenty pounds and frequently lift ten pounds; stand and/or walk about six hours in an eight-hour workday; sit about six hours in an eight-hour workday; occasionally crawl, stoop, and climb ladders or scaffolds; frequently climb stairs, balance, kneel, and crouch; and was precluded from concentrated exposure to hazards. Tr. 334-341.

Dr. Tollison reported in January 2006 progress notes that Plaintiff was stable and making some progress. Tr. 344. On February 10, 2006, Dr. Tollison found that Plaintiff had intact thought processes and appropriate thought content; was worried/anxious and depressed; and had poor attention/concentration, but adequate memory. Tr. 343. On February 6, 2006, Dr. LeBlond issued a statement opining that Plaintiff was permanently and totally disabled as a result of his physical injuries and psychological problems caused by his October 2002 work injury. Tr. 501.

Dr. Lisa Varner, a State agency psychologist, reviewed the medical record in February 2006, and completed a Psychiatric Review Technique form ("PRTF"). Tr. 354-367. Dr. Varner opined that Plaintiff had "mild" restriction of activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence or pace; and no episodes of decompensation. Tr. 364. Dr. Varner also completed an assessment of Plaintiff's mental functional capacity and concluded that Plaintiff's mental impairments were severe, but did not

7

preclude the performance of simple, repetitive work activities in a setting that did not require ongoing interaction with the public. Tr. 350-352.

In a March 3, 2010 affidavit, Dr. LeBlond opined that Plaintiff could lift and carry less than ten pounds occasionally; stand and walk less than two hours in an eight-hour workday; and could not sit for six hours in an eight-hour workday, even with a sit and stand option. Tr. 545-46. Plaintiff could never climb ramps and stairs, bend, stoop, kneel, crouch, or crawl and could occasionally balance. Tr. 546-547. Dr. LeBlond thought that Plaintiff's pain medications had side effects that would prevent him from staying on task for even two-hour periods. Tr. 548. Dr. LeBlond also opined that Plaintiff would miss more than three days of work per month due to his pain. Tr. 548. He further indicated that Plaintiff's limitations existed prior to December 31, 2007. Tr. 549.

## **HEARING TESTIMONY**

Plaintiff testified at the hearing held on December 10, 2010 that he suffered from pain since his on-the-job accident, when he fell over a railroad tie, sustaining back and abdominal injuries. Tr. 128, 130. He stated that after being sent to the company doctor, he was referred to another doctor who found a hernia which resulted in six surgeries. Tr. 131. Plaintiff reported that his pain level was between seven to eight most of the time. Tr. 140. He took Soma and Roxicodone for pain relief. Plaintiff also stated that he took Xanax and sleeping pills, and that he had medication side effects, including constipation and dry mouth. Tr. 141. He also used back and abdominal braces, heating pads, and an electric blanket to alleviate his symptoms. Tr. 142. Plaintiff said he spent about four hours a day lying down. Tr. 143.

Plaintiff testified that he could lift no more than five pounds, sit for twenty minutes at a time, and stand for three or four minutes at a time. Tr. 133, 136. He could not bend or squat. Tr. 137-38.

Plaintiff stated he had a driver's license and drove very little, did not cook, went to church from time to time, went fishing occasionally, and went shopping occasionally. Tr. 143-144, 153-154, 156. Plaintiff testified that he used a walker for assistance, but only in the house. Tr. 160.

**DISCUSSION**

Plaintiff appears to allege that the ALJ's decision is not supported by substantial evidence and in particular that the ALJ erred in discounting the opinions of treating physician Dr. LeBlond, treating psychologist Dr. Tollison, and VE Adams. The Commissioner contends that the final decision is supported by substantial evidence[2] and free of reversible legal error.

    A.    <u>Substantial Evidence/RFC/Credibility</u>

Plaintiff appears to allege that the ALJ's determination that he could perform a reduced range of light work is not supported by substantial evidence. The Commissioner contends that substantial evidence supports the ALJ's assessment of Plaintiff's RFC.

The ALJ's determination that Plaintiff had the RFC to perform a reduced range of light work is supported by substantial evidence and correct under controlling law. Objective medical testing supports the ALJ's decision. A lumbar MRI during the relevant period was essentially unremarkable (Tr. 461) and straight leg raising tests were repeatedly negative (322-328, 370-371, 373-379, 382, 384). The ALJ also noted (Tr. 21) that Plaintiff did not seek treatment from Dr. LeBlond during the

---

[2]Substantial evidence is:
>evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

<u>Shively v. Heckler</u>, 739 F.2d 987, 989 (4th Cir. 1984); <u>Laws v. Celebreeze</u>, 368 F.2d 640, 642 (4th Cir. 1966). It must do more, however, than merely create a suspicion that the fact to be established exists. <u>Cornett v. Califano</u>, 590 F.2d 91, 93 (4th Cir. 1978).

period of August 2006 until January 8, 2008. See Mickles v. Shalala, 29 F.3d 918, 930 (4th Cir. 1994)(ALJ did not err by considering the inconsistency between claimant's level of treatment and her claims of disabling pain).

As noted by the ALJ (Tr. 21), Dr. Monda characterized Plaintiff as having only mild degenerative changes at L4-5, and found that Plaintiff had negative straight leg raise testing, good motion of his lumbosacral spine, and no trouble getting on and off the examining table. He noted that Plaintiff reported that his pain medications were helping and Plaintiff reported in September 2004 that he was walking thirty to forty-five minutes a day for exercise. See Tr. 465, 469, 475.

The ALJ's determination that Plaintiff's abdominal pain was not totally disabling is also supported by substantial evidence. The ALJ noted (Tr. 22) that although Plaintiff had to have his abdominal hernia repaired several times, the latest repair held as supported by Plaintiff's report to Dr. Monda in February 2004 that he was not having problems with his abdomen. That Plaintiff's abdominal problems were not completely disabling is also supported by Plaintiff's lack of medications specifically for the problem, the lack of need of the services of a specialist such as a gastroenterologist, and Plaintiff's reports of doing farm work including digging post holes and lifting objects weighing up to eighty pounds.

The ALJ found that Plaintiff's mental impairments restricted him to simple routine repetitive tasks at level three reasoning with only occasional interaction with the public, and appropriate interaction with co-workers and supervisors in a stable routine work setting. He found that these impairments were not completely disabling because they only resulted in mild limitations in activities of daily living; moderate limitations in social functioning and concentration, persistence, or pace; and no documented episodes of decompression or decompensation in work or work-like setting. The

ALJ's RFC is supported by Plaintiff's sporadic treatment for his depression and anxiety; Dr. Tollison's notation that Plaintiff had intact thought processes and appropriate thought content, adequate memory; Dr. LeBlond's description of Plaintiff as stable from an emotional standpoint; and Plaintiff's activities of daily living. See Tr. 23-24.

The ALJ's decision is also supported by the opinions of the State agency medical sources. See 20 C.F.R. §§ 404.1527 and 416.927; SSR 96-6p ("Findings of fact made by State agency ... [physicians ]... regarding the nature and severity of an individual's impairment(s) must be treated as expert opinion of non-examining sources at the [ALJ] and Appeals Council level of administrative review."). As noted above, Dr. El-Ibairy opined that Plaintiff was capable of performing a reduced range of light work and Dr. Varner opined that Plaintiff was capable of performing simple, repetitive work activities in a setting that did not require ongoing interaction with the public.

The ALJ's decision to discount Plaintiff's credibility[3] is supported by the medical and nonmedical evidence. In particular, it is supported by Plaintiff's activities of daily living. See Mastro v. Apfel, 270 F.3d 171, 179 (4th Cir. 2001)(claimant's daily activities undermined her subjective complaints). Plaintiff testified at the August 2009 hearing as to limited activities (watering

---

[3]In assessing credibility, the ALJ must: (1) determine whether there is objective evidence of an impairment which could reasonably be expected to produce the pain alleged by a plaintiff and, if such evidence exists, (2) consider a plaintiff's subjective complaints of pain, along with all of the evidence in the record. See Craig v. Chater, 76 F.3d 585, 591-92 (4th Cir. 1996); Mickles v. Shalala, 29 F.3d 918 (4th Cir. 1994). Although a claimant's allegations about pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which the impairment can reasonably be expected to cause the pain the claimant alleges he suffers. A claimant's symptoms, including pain, are considered to diminish his or her capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and other evidence. 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4).

horses and occasionally feeding chickens) at his father's farm in contrast to the strenuous activities which he reported to his physicians during the same time period. See Mickles v. Shalala, 29 F.3d at 930. In February 2008, Plaintiff told Dr. LeBlond that he had been putting up a barbed wire fence along his property for his cattle. Tr. 371. A month later, Plaintiff told his physical therapist that he had been building a fence, which included digging post holes all day, and lifting eighty-pound posts and bags of cement. Tr. 389. In March 2008, Plaintiff reported to psychologist Dr. John Burton that he was working on his father's farm daily. Tr. 398.

B.  Opinion Evidence

Plaintiff argues that the ALJ erred in evaluating the opinions of treating physician Dr. LeBlond, treating psychologist Dr. Tollison, and VE Adams. The Commissioner contends that the ALJ's decision to discount these opinions is supported by substantial evidence.

The medical opinion of a treating physician is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. See 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2); Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). Thus, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996). Under such circumstances, "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." Mastro v. Apfel, 270 F.3d at 178 (citing Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir.1992)).

Under § 404.1527, if the ALJ determines that a treating physician's opinion is not entitled to controlling weight, he must consider the following factors to determine the weight to be afforded the

physician's opinion: (1) the length of the treatment relationship and the frequency of examinations; (2) the nature and extent of the treatment relationship; (3) the evidence with which the physician supports his opinion; (4) the consistency of the opinion; and (5) whether the physician is a specialist in the area in which he is rendering an opinion. 20 C.F.R. § 404.1527. Social Security Ruling 96-2p provides that an ALJ must give specific reasons for the weight given to a treating physician's medical opinion. SSR 96-2p.

The ALJ's decision to discount the opinion evidence in question is supported by substantial evidence and correct under controlling law. Dr. Tollison's December 2005 and Dr. LeBlond's February 2006 opinions that Plaintiff was permanently and totally disabled were properly discounted as these are opinions on an issue reserved to the Commissioner and thus were not entitled to any special weight or significance. See 20 C.F.R. § 404.1527; Castellano v. Secretary of Health and Human Servs., 26 F.3d 1027, 1029 (10th Cir. 1994). The ALJ also properly discounted these opinions because that they were unsupported by any reference to objective findings or examination results (see Tr. 24).

The ALJ properly discounted Dr. LeBlond's March 2010 opinion because Dr. LeBlond provided no explanation or support for his limitations (Tr. 25). See 20 C.F.R. § 404.1527(c)(3). As noted by the ALJ (Tr. 25), Dr. LeBlond's opinion was inconsistent with his own treatment notes which revealed minimal objective findings and which referred to Plaintiff's strenuous activities working on his farm. See 20 C.F.R. § 404.1527(c)(4).

Mr. Adams, as a VE, is not an "acceptable medical source" and instead is considered a nonmedical "other source" along with teachers, spouses, relatives, and friends. See SSR 06-03p; 20 C.F.R. § 404.1513(a) and (d); 20 C.F.R.§ 404.1527. Thus, he is not a treating source whose medical

opinion may be entitled to controlling weight. See 20 C.F.R. § 404.1527(a)(2); 20 C.F.R. § 404.1513. Opinions from other sources, however, may reflect the source's judgment about a claimant's symptoms, diagnosis and prognosis, what the individual can do despite the impairment, and physician and mental restrictions. See SSR 06-03p. "[T]he case record should reflect the consideration of opinions from medical sources who are not 'acceptable medical sources' and from 'non-medical sources' who have seen the claimant in their professional capacity." Id. SSR 06-03p further provides:

> Although there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision, the adjudicator generally should explain the weight given to opinions from these "other sources," or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case.

The ALJ's decision to discount the opinion of Mr. Adams is supported by substantial evidence and correct under controlling law. The ALJ found that Mr. Adams' testing showed that Plaintiff was literate and had intact basic computational skills, and that the Beck Depression Inventory results were consistent with the ALJ's analysis of Plaintiff's mental limitations. As noted by the ALJ, Mr. Adams' opinion appears to have been based largely on Plaintiff's subjective, unsupported assertions. Plaintiff reported to Mr. Adams that he needed to elevate his legs for lengthy periods, yet there is no indication that any treating source told Plaintiff to do so. The medical record also does not support Plaintiff's report to Mr. Adams that he was essentially bed bound for six to eleven days per month. Mr. Adams also noted that Plaintiff had very low activities of daily living (in contrast to the more strenuous activities discussed above).

14

## **CONCLUSION**

Based on the foregoing, it is RECOMMENDED that the Commissioner's decision be **AFFIRMED**.

Joseph R. McCrorey
United States Magistrate Judge

September 28, 2012
Columbia, South Carolina